# EXHIBIT "A"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS RECEIVED

Civil Action No. 04-11856-GAO
JUN 16 2005

ANNIE BATTARD,            )
       Plaintiff          )                    CLINTON & MUZYKA, P.C.
                          )        **PLAINTIFF'S FIRST REQUEST**
   v.                     )        **FOR ADMISSIONS BY THE DEFENDANT,**
                          )        **ANTONIO CAPELA**
ANTONIO CAPELA,           )
       Defendant          )

Pursuant to Fed. R. Civ. P. 36, the plaintiff, Annie Battard, hereby requests that the defendant, Antonio Capela, admit the truth of the following statements:

1.    On August 27, 2001, the defendant, Antonio Capela, was the owner of a 22 foot 2001 Islandia Sea Doo Bombardier single propeller recreational vessel which was duly registered pursuant to the laws of the Commonwealth of Massachusetts, registration number MS9121AB (hereafter "the vessel").

2.    On August 27, 2001, the plaintiff rode as an invited guest in the defendant's vessel.

3.    Annie Battard, Antonio Capela, Oliver Hummels, Cassidy Gillespie and Ivy Smith were all of the individuals aboard the vessel on August 27, 2001 at the time when the plaintiff was injured.

4.    Oliver Hummels and the defendant are friends and domestic partners.

5.    Oliver Hummels and the defendant have lived together in a single family home at 8 Julia Street, Newburyport, since before Annie Battard was injured on August 27, 2001.

6.     Oliver Hummels and the defendant jointly own the single family home at 8 Julia Street, Newburyport, as joint tenants.

7.     At divers times during the voyage on August 27, 2001, the defendant operated the vessel.

8.     At divers times during the voyage on August 27, 2001, Oliver Hummels operated the vessel.

9.     During those times when Oliver Hummels operated the vessel, Mr. Hummels operated the vessel with the defendant's permission.

10.    During those times when Oliver Hummels operated the vessel, Mr. Hummels operated the vessel with the defendant's knowledge.

11.    During those times when Oliver Hummels operated the vessel, Mr. Hummels operated the vessel under the defendant's guidance.

12.    During those times when Oliver Hummels operated the vessel, Mr. Hummels operated the vessel under the defendant's control.

13.    On August 27, 2001, the vessel operated on the waters of the Merrimack River in the vicinity of Newburyport.

14.    On August 27, 2001, the waters of the Merrimack River in the vicinity of Newburyport, constituted a navigable waterway.

15.    On August 27, 2001, Annie Battard sustained injuries aboard the vessel.

2

16.  At the time she was injured, Annie Battard was sitting at the bow of the vessel.

17.  At the time Annie Battard was injured, Cassidy Gillespie and Ivy Smith were seated at the bow of the vessel.

18.  The vessel was jet powered.

19.  The vessel had a single deck.

20.  At the time Annie Battard was injured, the defendant and Oliver Hummels were on the same deck.

21.  At the time Annie Battard was injured, the sea was rough.

22.  At the time Annie Battard was injured, Oliver Hummels was operating the vessel.

23.  At the time Annie Battard was injured, Oliver Hummels was operating the vessel with the defendant's permission.

24.  At the time Annie Battard was injured, Oliver Hummels was operating the vessel with the defendant's knowledge.

25.  Just before Annie Battard was injured, Oliver Hummels was operating the vessel at high speed.

26.  Just before Annie Battard was injured, Oliver Hummels was operating the vessel at an unsafe speed.

27.  Just before Annie Battard was injured, the vessel struck a wave (hereafter "first wave").

28.  When the vessel struck the first wave, Annie Battard, Cassidy Gillespie and Ivy Smith were lifted from their seats by

3

the force of the wave.

29.    The vessel did not slow after it struck the first wave.

30.    Oliver Hummels did not slow the vessel after it struck the first wave.

31.    The defendant did not slow the vessel after it struck the first wave.

32.    The defendant did not take physical control of the operation of the vessel after it struck the first wave.

33.    Shortly after it struck the first wave, the vessel struck a second wave.

34.    When the vessel struck the second wave, Annie Battard was lifted from her seat by the force of the wave and landed violently in her seat.

35.    After the vessel struck the second wave, Annie Battard fell from her seat and landed on the deck.

36.    After Annie Battard landed on the deck, she was unable to get up.

37.    After Annie Battard landed on the deck, the other people aboard the vessel were unable to help Annie Battard to her feet.

38.    The defendant contacted the U.S. Coast Guard for assistance transporting Annie Battard to shore.

39.    The U.S. Coast Guard transferred Annie Battard from the vessel to a U.S. Coast Guard vessel.

4

40.  The U.S. Coast Guard transported Annie Battard to shore in Newburyport.

41.  Annie Battard was transported by ambulance from shore to the Anna Jacques Hospital.

42.  The defendant knew that Annie Battard had been injured aboard the vessel.

43.  The defendant never filed a report of Annie Battard's injury with the Massachusetts Environmental Police.

44.  The defendant operated the vessel negligently.

45.  Oliver Hummels operated the vessel negligently.

46.  The defendant operated the vessel at an unsafe speed.

47.  Oliver Hummels operated the vessel at an unsafe speed.

48.  The defendant operated the vessel in an unsafe configuration.

49.  Oliver Hummels operated the vessel in an unsafe configuration.

50.  The defendant operated the vessel in disregard of conditions existing on the River.

51.  Oliver Hummels operated the vessel in disregard of conditions existing on the River.

52.  The defendant operated the vessel in violation of existing laws, rules, regulations and customs regarding the safe operation of vessels.

53.  Oliver Hummels operated the vessel in violation of

5

existing laws, rules, regulations and customs regarding the safe operation of vessels.

54.   The defendant's operation of the vessel caused the vessel to react violently and boisterously to the prevailing condition of the seas.

55.   Oliver Hummels' operation of the vessel caused the vessel to react violently and boisterously to the prevailing condition of the seas.

56.   As a direct and proximate result of the defendant's negligence, the plaintiff was injured.

57.   As a direct and proximate result of Oliver Hummels' negligence, the plaintiff was injured.

58.   The defendant negligently breached the duty of care he owed to the plaintiff by failing to exercise due, safe and reasonable care in the operation of his vessel upon navigable waters under existing conditions.

59.   Oliver Hummels negligently breached the duty of care he owed to the plaintiff by failing to exercise due, safe and reasonable care in the operation of the defendant's vessel upon navigable waters under existing conditions.

6

By her Attorney,

MARK F. ITZKOWITZ (BBO# 248130)
85 Devonshire Street
Suite 1000
Boston, MA  02109-3504
(617) 227-1848
March 15, 2005

## CERTIFICATE OF SERVICE

I, Mark F. Itzkowitz, counsel for the plaintiff, hereby
certify that on this date, I made service of the within document
by mailing/faxing/hand-delivering a copy of same to counsel of
record:

Thomas J. Muzyka, Esquire
Terence G. Kenneally, Esquire
Clinton & Muzyka, P.C.
One Washington Mall
Suite 1400
Boston, MA   02108.

MARK F. ITZKOWITZ (BBO #248130)

Dated:  March 15, 2005

7

# EXHIBIT "B"

# *Mark F. Itzkowitz*

*Attorney at Law*

*85 Devonshire Street*
*Suite 1000*
*Boston, Massachusetts 02109-3504*

*Telephone: (617) 227-1848*
*Facsimile: (617) 742-9130*
*Also Admitted In New York*

RECEIVED

APR 1 8 2005

April 15, 2005

CLINTON & MUZYKA, P.C.

**VIA FACSIMILE**

Thomas J. Muzyka, Esquire
Terence G. Kenneally, Esquire
Clinton & Muzyka, P.C.
One Washington Mall
Suite 1400
Boston, MA  02108

      *Re:*   ***ANNIE BATTARD v. ANTONIO CAPELA***
             ***Civil Action No. 04-11856-GAO***

Dear Attorneys Muzyka and Kenneally:

      Per my conversation with Attorney Muzyka, enclosed please find the Plaintiff's Request for Leave to File a Memorandum in Reply to Oliver Hummels' Opposition to Plaintiff's Motion for Leave to Amend Complaint (Assented To), in the above entitled action.  Thank you for assenting to the Request.  I intend to file the Request electronically by 4:00 p.m. unless you advise me that you object to the wording of the Request before that time.

      Thank you for your courtesy and cooperation.

                Very truly yours,

                Mark F. Itzkowitz

MFI:el
enc.

**EXHIBIT "C"**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 04-11856-GAO

ANNIE BATTARD
    Plaintiff,

vs.

ANTONIO CAPELA
    Defendant.

### DEFENDANT, ANTONIO CAPELA'S, ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Now comes the defendant, Antonio Capela, in the above entitled action, by and through his undersigned counsel, and files herewith his answers to Plaintiff's First Set of Interrogatories as follows:

### GENERAL OBJECTION

The defendant objects to all of the plaintiff's Interrogatories insofar as they seek discovery of matters which constitute privileged communications or materials prepared in the anticipation of litigation or trial. By furnishing an answer to any Interrogatory, the defendant does not waive any of its general or specific objections to that or any other Interrogatory.

### INTERROGATORIES

Q.1.    "State the basis" of each of the defendant's defenses in this action.

A.1.    See Answers to Interrogatory Nos. 2, 3, 4 and 10. In addition, the defendant states that the

provisions of 46 USCA, Appx. § 183 (b) are
available as a statutory defense/limitation to the
plaintiff's allegations. Each affirmative defense
raised by the defendant preserves his rights
should his investigation reveal sufficient facts
to support them.  The defendant continues his
investigation and reserves the right to supplement
his Answer(s) if additional information is
discovered.

Q.2.    If you claim that the negligence of any other
        person or persons, including without limitation,
        the plaintiff, contributed to cause the
        occurrence, please identify all such persons and
        the manner in which they contributed to cause the
        occurrence.

A.2.    Based upon the discovery to date, the defendant
        submits that the plaintiff's injury was caused by
        her failure to heed the defendant' warning to move
        to the rear of the vessel, her failure to heed
        warning signs posted in/on the vessel, and her
        failure avoid an obvious and known sea condition
        while riding in the bow of the vessel.  The
        defendant reserves the right to supplement this
        answer.

Q.3.    Identify each and every condition, whether of the
        sea, weather, lighting, vessel condition, vessel
        operation, obstruction, or any other factor which
        you contend contributed in any way to cause the
        occurrence, and for each factor identified:

        a.    explain in full and complete detail how each
        such factor contributed to the occurrence;

        b.    identify the manner in which each such factor
        was caused or created;

        c.    "identify", as defined above, each person
        believed responsible for the creation of any such
        factor;

        d.    the reason for the creation of each such
        factor;

    e.   the relative magnitude of such conditions,
contribution compared to the other causes of the
alleged occurrence;

    f.   whether the alleged occurrence would have
happened without such condition;

    g.   when and how you first became aware of each
such factor; and

    h.   everything you did to avoid such factor
presenting a hazard to the operation of the vessel
from the time that you first became aware of each
such factor until the time of the occurrence.

A.3.    The defendant submits the following responses to
subparagraphs a through h.
The sea conditions at the mouth of the Merrimack
River and the weather at the time of the alleged
incident contributed to the occurrence.  My
recollection of the sea was 2 to 3 feet with winds
sustained at 15 m.p.h.  Further, the defendant
submits that the plaintiff failed to heed the
defendant's verbal warning to move to the rear of
the vessel upon approaching the mouth of the
Merrimack River.  Further still, the plaintiff
failed to heed the warning signs posted at each
bow seat of the vessel which state, "WARNING:  Do
not sit here above idle speed."   The defendant
submits that the speed of the vessel at the time
of the alleged incident was approximately 10-12
m.p.h.   The defendant is unable to assess the
magnitude that each of these variables contributed
to the alleged incident.  However, the defendant
states that if the plaintiff moved to the vessel's
stern she would not have sustained any injuries.
The defendant reserves the right to supplement
this answer as discovery progresses.

Q.4.    Identify in detail everything that you did in an
attempt to avoid the occurrence and/or to lessen
the plaintiff's damages.

A.4.    The defendant submits that the plaintiff observed
and was informed that the sea condition at the
mouth of the Merrimack River was rough and she
should move to the vessel's stern.  After the

4

first wave was encountered, the plaintiff and the other passengers in the bow of the vessel were instructed to hold on.  The operator, Oliver Hummels, immediately slowed the vessel's speed.

Q.5.  With respect to each Request for Admission as to which the defendant has responded with anything other than an unequivocal admission and/or affirmative response, please "state the basis" of your response.

A.5.  The defendant objects to the scope of this interrogatory as it is beyond the permissible areas of inquiry permitted by the Rules of Civil Procedure.  Without waiving his objection, the defendant states that he has filed Responses to the plaintiff's Request for Admissions. Accordingly, the basis for each response is either self evident or stated in the response.  In Responses 28, 34 and 37, the defendant requires additional discovery to obtain the information sought therein.

Q.6.  Identify the weather conditions at:

a.  the time of the occurrence;

b.  15 minutes before the occurrence;

c.  30 minutes before the occurrence;

d.  one hour before the occurrence;

e.  two hours before the occurrence.

A.6.  a. through e. The defendant objects to Interrogatory No.6 as it seeks information that is overly broad, unduly burdensome, unlikely to lead to the discovery of admissible evidence, and is a matter of public record equally available to the plaintiff.  Without waiving said objection, defendant states that his recollection of the weather from the time the plaintiff boarded the vessel to the time of the alleged incident was partly cloudy with temperatures in the upper 70s to 80 degrees Fahrenheit.  The defendant further

submits that the plaintiff boarded his vessel one hour before the alleged incident occurred.

Q.7.    Identify the wind velocity at:

a.    the time of the occurrence;

b.    15 minutes before the occurrence;

c.    30 minutes before the occurrence;

d.    one hour before the occurrence;

e.    two hours before the occurrence.

A.7.    a. through e. The defendant objects to Interrogatory No.7 as it seeks information that is overly broad, unduly burdensome, unlikely to lead to the discovery of admissible evidence, and is a matter of public record equally available to the plaintiff. Without waiving said objection, defendant states that his recollection of the wind velocity at the time of the alleged incident was approximately 15 m.p.h.

Q.8.    With respect to the vessel; identify:

a.    its normal cruising speed;

b.    its maximum speed;

c.    its actual speed at the time of the occurrence;

d.    its speed 15 minutes before the occurrence;

e.    its speed 30 minutes before the occurrence.

A.8.    a. through e. The defendant objects to Interrogatory No.8 as it seeks information that is overly broad, unduly burdensome and unlikely to lead to the discovery of admissible evidence. Without waiving said objection, the defendant states that there is no normal cruising speed because it depends on the weather conditions. The vessel's maximum speed is 30-35 m.p.h. The vessel's speed at the time of the alleged incident

was approximately 10-12 m.p.h. I don't recall the vessel's speed at 15 and 30 minutes before the occurrence.

Q.9.     Identify any warnings given to the plaintiff about safe conduct aboard the vessel, heavy seas, inclement weather, and/or safety precautions.

A.9.     See Answer to Interrogatory No. 3.

Q.10.    Identify whether there were any safety precautions taken to protect the plaintiff or other passengers from failing down in heavy seas, either before or after the occurrence, and, if so, identify:

         a.    the nature of the precautions;

         b.    when the precautions were taken; and

         c.    where the vessel was at the time the precautions were taken.

A.10.    a. through c. See Answer to Interrogatory No. 3. The defendant further submits that the vessel encountered two successive waves that caused it to pitch. After the first wave was encountered, the plaintiff and the other passengers in the bow of the vessel were instructed to hold on. The operator, Oliver Hummels, immediately slowed the vessel's speed.

Q.11.    During the period from two hours before the occurrence to the time of the occurrence, identify whether the vessel was rolling or pitching, and, if so, identify both the degree of roll and the degree of pitch the vessel was undergoing at:

         a.    the time of the occurrence;

         b.    15 minutes before the occurrence;

         c.    30 minutes before the occurrence;

         d.    one hour before the occurrence;

         e.    two hours before the occurrence.

Q.13.   Identify the purpose of your trip, including, without limitation, where you were coming from, where you were going to, and when, where and why you made any stops along the way.

A.13.   Approximately one hour before the alleged incident, the plaintiff boarded the defendant's vessel at a dock located at Deborah Smith's residence in Amesbury, Massachusetts. Upon departing Amesbury, we intended to travel to Crane's Beach in Newburyport Massachusetts. The itinerary was set by Cassidy Gillespie, a mutual friend of the defendant and the plaintiff.

Q.14.   Identify all persons who have an ownership interest in the vessel and identify the percentage ownership interest of each such person.

A.14.   The defendant owns the vessel.


Signed under the pains and penalties of perjury this 7th day of June, 2005.

By: _____
    Antonio Capela


OBJECTIONS:

_____
Terence G. Kenneally
Clinton & Muzyka, P.C.

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by hand, mail, certified mail, facsimile on: 6/10/05

## EXHIBIT "D"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 04-11856-GAO

ANNIE BATTARD
    Plaintiff,

VS.

ANTONIO CAPELA
    Defendant.

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### FIRST REQUEST FOR ADMISSIONS

Now comes the defendant, Antonio Capela, in the above-entitled action, by and through his undersigned counsel, Clinton & Muzyka, P.C. and hereby submits his Response to Plaintiff's First Request for Admissions.

### GENERAL OBJECTION

The defendant objects to all of the plaintiff's Requests insofar as they seek discovery of matters which constitutes privileged communications or materials prepared in anticipation of litigation or trial. By furnishing a response to any request, the defendant does not waive any of its general or specific objections to that or any other Request.

### REQUEST NO. 1

On August 27, 2001, the defendant, Antonio Capela, was the owner of a 22 foot 2001 Islandia Sea Doo Bombardier single propeller recreational vessel which was duly registered pursuant to the laws of the Commonwealth of

2

Massachusetts, registration number MS9121AB
(hereinafter "the vessel")

## RESPONSE NO. 1

Admitted.

## REQUEST NO. 2

On August 27, 2001, the plaintiff rode as an invited
guest in the defendant's vessel.

## RESPONSE NO. 2

The defendant admits that the plaintiff was a friend of
Cassidy Gillespie and accompanied her aboard the vessel
with the defendant's permission.

## REQUEST NO. 3

Annie Battard, Antonio Capela, Oliver Hummels, Cassidy
Gillespie and Ivy Smith were all of the individuals
aboard the vessel on August 27, 2001 at the time when
the plaintiff was injured.

## RESPONSE NO.3

The defendant admits that Annie Battard, Antonio
Capela, Oliver Hummels, Cassidy Gillespie and Ivy Smith
were all of the individuals aboard the vessel on August
27, 2001, but cannot admit or deny that the plaintiff
was injured.

## REQUEST NO. 4

Oliver Hummels and the defendant are friends and
domestic partners.

## RESPONSE NO. 4

The defendant objects to this request for admission as
it is irrelevant and beyond the scope of the
permissible inquiry and Rule of Civil Procedure.

3

## REQUEST NO. 5

Oliver Hummels and the defendant lived together in a single family home at 8 Julia Street, Newburyport, since before Annie Battard was injured on August 27, 2001.

## RESPONSE NO. 5

The defendant objects to this request for admission as it is irrelevant and beyond the scope of the permissible inquiry and Rule of Civil Procedure.

## REQUEST NO. 6

Oliver Hummels and the defendant jointly own the single family home at 8 Julia Street, Newburyport, as joint tenants.

## RESPONSE NO. 6

The defendant objects to this request for admission as it is irrelevant and beyond the scope of the permissible inquiry and Rule of Civil Procedure.

## REQUEST NO. 7

At divers' times during the voyage on August 27, 2001, the defendant operated the vessel.

## RESPONSE NO. 7

Denied.

## REQUEST NO. 8

At divers' times during the voyage on August 27, 2001, Oliver Hummels operated the vessel.

## RESPONSE NO.8

Admitted.

4

## REQUEST NO. 9

During those times when Oliver Hummels operated the vessel, Mr. Hummels operated the vessel with the defendant's permission.

## RESPONSE NO. 9

Admitted.

## REQUEST NO. 10

During those times when Oliver Hummels operated the vessel, Mr. Hummels operated the vessel with the defendant's knowledge.

## RESPONSE NO. 10

Admitted.

## REQUEST NO. 11

During those times when Oliver Hummels operated the vessel, Mr. Hummels operated the vessel under the defendant's guidance.

## RESPONSE NO. 11

Denied.

## REQUEST NO. 12

During those times when Oliver Hummels operated the vessel, Mr. Hummels operated the vessel under the defendant's control.

## RESPONSE NO.12

Denied.

## REQUEST NO. 13

On August 27, 2001, the vessel operated on the waters of the Merrimack River in the vicinity of Newburyport.

5

### RESPONSE NO. 13

Admitted.

### REQUEST NO. 14

On August 27, 2001, the waters of the Merrimack River in the vicinity of Newburyport constituted a navigable waterway.

### RESPONSE NO. 14

Admitted.

### REQUEST NO. 15

On August 27, 2001, Annie Battard sustained injuries aboard the vessel.

### RESPONSE NO. 15

The defendant cannot either admit or deny this request for admission as it calls for a medical opinion that the defendant is not qualified to opine.

### REQUEST NO. 16

At the time she was injured, Annie Battard was sitting at the bow of the vessel.

### RESPONSE NO. 16

The defendant admits that Annie Battard was sitting at the bow of the vessel, but cannot either admit or deny the remainder of this request for admission as it calls for a medical opinion that the defendant is not qualified to opine.

### REQUEST NO. 17

At the time of Annie Battard was injured, Cassidy Gillespie and Ivy Smith were seated at the bow of the vessel.

**RESPONSE NO. 17**

The defendant admits that Cassidy Gillespie and Ivy Smith were seated at the bow of the vessel, but cannot either admit or deny the remainder of this request for admission as it calls for a medical opinion that the defendant is not qualified to opine.

**REQUEST NO. 18**

The vessel was jet powered.

**RESPONSE NO. 18**

Denied.

**REQUEST NO. 19**

The vessel had a single deck.

**RESPONSE NO.19**

Admitted.

**REQUEST NO. 20**

At the time Annie Battard was injured, the defendant and Oliver Hummels were on the same deck.

**RESPONSE NO. 20**

The defendant admits that he and Oliver Hummels were on the same deck, but cannot either admit or deny the remainder of this request for admission as it calls for a medical opinion that the defendant is not qualified to opine.

**REQUEST NO. 21**

At the time Annie Battard was injured, the sea was rough.

**RESPONSE NO. 21**

Denied, the mouth of the river had different sea conditions than in the river itself.  The defendant cannot either admit or deny the remainder of this

7

request for admission as it calls for a medical opinion
that the defendant is not qualified to opine

## REQUEST NO. 22

At the time Annie Battard was injured, Oliver Hummels
was operating the vessel.

## RESPONSE NO. 22

The defendant admits that Oliver Hummels was operating
the vessel, but cannot either admit or deny the
remainder of this request for admission as it calls for
a medical opinion that the defendant is not qualified
to opine.

## REQUEST NO. 23

At the time Annie Battard was injured, Oliver Hummels
was operating the vessel with the defendant's
permission.

## RESPONSE NO. 23

The defendant admits that Oliver Hummels was operating
the vessel with the defendant's permission, but cannot
either admit or deny the remainder of this request for
admission as it calls for a medical opinion that the
defendant is not qualified to opine.

## REQUEST NO. 24

At the time Annie Battard was injured, Oliver Hummels
was operating the vessel with the defendant's
knowledge.

## RESPONSE NO. 24

The defendant admits that Oliver Hummels was operating
the vessel with the defendant's knowledge, but cannot
either admit or deny the remainder of this request for
admission as it calls for a medical opinion that the
defendant is not qualified to opine.

## REQUEST NO. 25

Just before Annie Battard was injured, Oliver Hummels was operating the vessel at high speed.

## RESPONSE NO. 25

The defendant denies that Oliver Hummels was operating the vessel at high speed, but cannot either admit or deny the remainder of this request for admission as it calls for a medical opinion that the defendant is not qualified to opine.

## REQUEST NO. 26

Just before Annie Battard was injured, Oliver Hummels was operating the vessel at an unsafe speed.

## RESPONSE NO. 26

The defendant denies that Oliver Hummels was operating the vessel at an unsafe speed, but cannot either admit or deny the remainder of this request for admission as it calls for a medical opinion that the defendant is not qualified to opine.

## REQUEST NO. 27

Just before Annie Battard was injured, the vessel struck a wave (hereinafter "first wave").

## RESPONSE NO. 27

Denied, the defendant objects to the words "struck" and "injured" but admits that the vessel encountered a 2 to 3 foot wave as it proceeded out of the mouth of the river.  The defendant cannot either admit or deny the remainder of this request for admission as it calls for a medical opinion that the defendant is not qualified to opine.

## REQUEST NO. 28

When the vessel struck the first wave, Annie Battard, Cassidy Gillespie and Ivy Smith were lifted from their seats by force of the wave.

**RESPONSE NO. 28**

The defendant objects to the words "struck" and
"injured" but admits that the vessel encountered a 2 to
3 foot wave as it proceeded out of the mouth of the
river.  The defendant cannot either admit or deny the
remainder of this request for admission as it calls for
a medical opinion that the defendant is not qualified
to opine.
Without waiving his objection and after a reasonable
inquiry, the information known or readily obtainable by
the defendant is insufficient to enable him to admit or
deny this request.

**REQUEST NO. 29**

The vessel did not slow after it struck the first wave.

**RESPONSE NO. 29**

The defendant objects to the word "struck" but admits
that the vessel encountered a 2 to 3 foot wave as it
proceeded out of the mouth of the river.
Without waiving its objection, the defendant responds
Denied.

**REQUEST NO. 30**

Oliver Hummels did not slow the vessel after it struck
the first wave.

**RESPONSE NO. 30**

The defendant objects to the word "struck" but admits
that the vessel encountered a 2 to 3 foot wave as it
proceeded out of the mouth of the river.
Without waiving its objection, the defendant responds
Denied.

**REQUEST NO. 31**

The defendant did not slow the vessel after it struck
the first wave.

**RESPONSE NO. 31**

The defendant objects to the word "struck".

10

Without waiving its objection, the defendant responds
Denied.

## REQUEST NO. 32

The defendant did not take physical control of the
operation of the vessel after it struck the first wave.

## RESPONSE NO. 32

The defendant objects to the word "struck".
Without waiving its objection, the defendant responds
Admitted.

## REQUEST NO. 33

Shortly after it struck the first wave, the vessel
struck a second wave.

## RESPONSE NO. 33

The defendant objects to the word "struck" but admits
that the vessel encountered two 2 to 3 foot waves as it
proceeded out of the mouth of the river.
Without waiving its objection, the defendant responds
Admitted.

## REQUEST NO. 34

When the vessel struck the second wave, Annie Battard
was lifted from her seat by the force of the wave and
landed violently in her seat.

## RESPONSE NO. 34

The defendant objects to the words "struck" and
"violently".
Without waiving its objection, the defendant responds
Denied.

## REQUEST NO. 35

After the vessel struck the second wave, Annie Battard
fell from her seat and landed on the deck.

**RESPONSE NO. 35**

The defendant objects to the word "struck".
Without waiving its objection, the defendant responds
Denied.

**REQUEST NO. 36**

After Annie Battard landed on the deck, she was unable
to get up.

**RESPONSE NO. 36**

After a reasonable inquiry, the information known or
readily obtainable by the defendant is insufficient to
enable him to admit or deny this request.

**REQUEST NO. 37**

After Annie Battard landed on the deck, the other
people aboard the vessel were unable to help Annie
Battard to her feet.

**RESPONSE NO. 37**

After a reasonable inquiry, the information known or
readily obtainable by the defendant is insufficient to
enable him to admit or deny this request.

**REQUEST NO. 38**

The defendant contacted the U.S. Coast Guard for
assistance transporting Annie Battard to shore.

**RESPONSE NO. 38**

The defendant admits that he contacted the U.S. Coast
Guard, but denies the remainder of this request for
admission.

**REQUEST NO. 39**

The U.S. Coast Guard transferred Annie Battard from the
vessel to a U.S. Coast Guard vessel.

**RESPONSE NO. 39**

Denied.

**REQUEST NO. 40**

The U.S. Coast Guard transported Annie Battard to shore in Newburyport.

**RESPONSE NO. 40**

Denied.

**REQUEST NO. 41**

Annie Battard was transported by ambulance from shore to the Anna Jacques Hospital.

**RESPONSE NO. 41**

Admitted.

**REQUEST NO. 42**

The defendant knew that Annie Battard had been injured aboard the vessel.

**RESPONSE NO. 42**

The defendant cannot either admit or deny this request for admission as it calls for a medical opinion that the defendant is not qualified to opine.

**REQUEST NO. 43**

The defendant never filed a report of Annie Battard's injury with the Massachusetts Environmental Police.

**RESPONSE NO. 43**

The defendant admits that he never filed a report of the incident with the Massachusetts Environmental Police. The defendant cannot either admit or deny the remainder of this request for admission as it calls for a medical opinion that the defendant is not qualified to opine.

**REQUEST NO. 44**

The defendant operated the vessel negligently.

**RESPONSE NO. 44**

Denied.

**REQUEST NO. 45**

Oliver Hummels operated the vessel negligently.

**RESPONSE NO. 45**

Denied.

**REQUEST NO. 46**

The defendant operated the vessel at an unsafe speed.

**RESPONSE NO. 46**

Denied.

**REQUEST NO. 47**

Oliver Hummels operated the vessel at an unsafe speed.

**RESPONSE NO. 47**

Denied.

**REQUEST NO. 48**

The defendant operated the vessel in an unsafe configuration.

**RESPONSE NO. 48**

Denied.

**REQUEST NO. 49**

Oliver Hummels operated the vessel in an unsafe configuration.

**RESPONSE NO. 49**

Denied.

**REQUEST NO. 50**

The defendant operated the vessel in disregard of conditions existing on the River.

**RESPONSE NO. 50**

Denied.

**REQUEST NO. 51**

Oliver Hummels operated the vessel in disregard of conditions on the River.

**RESPONSE NO. 51**

Denied.

**REQUEST NO. 52**

The defendant operated the vessel in violation of existing laws, rules, regulations and customs regarding the safe operation of vessels.

**RESPONSE NO. 52**

Denied.

**REQUEST NO. 53**

Oliver Hummels operated the vessel in violation of existing laws, rules, regulations and customs regarding the safe operation of vessels.

**RESPONSE NO. 53**

Denied.

**REQUEST NO. 54**

The defendant's operation of the vessel caused the vessel to reach violently and boisterously to the prevailing condition of the seas.

15

**RESPONSE NO. 54**

    Denied.

**REQUEST NO. 55**

    Oliver Hummels' operation of the vessel caused the vessel to reach violently and boisterously to the prevailing condition of the seas.

**RESPONSE NO. 55**

    Denied.

**REQUEST NO. 56**

    As a direct and proximate result of the defendant's negligence, the plaintiff was injured.

**RESPONSE NO. 56**

    Denied.

**REQUEST NO. 57**

    As a direct and proximate result of Oliver Hummels' negligence, the plaintiff was injured.

**RESPONSE NO. 57**

    Denied.

**REQUEST NO. 58**

    The defendant negligently breached the duty of care he owed to the plaintiff by failing to exercise due, safe and reasonable care in the operation of his vessel upon navigable waters under existing conditions.

**RESPONSE NO. 58**

    Denied.

**REQUEST NO. 59**

Oliver Hummel negligently breached the duty of care he owed to the plaintiff by failing to exercise due, safe and reasonable care in the operation of his vessel upon navigable waters under existing conditions.

**RESPONSE NO. 59**

Denied.

By his attorneys,
**CLINTON & MUZYKA, P.C.**

**Thomas J. Muzyka**
**BBO NO: 365540**
**Terence G. Kenneally**
**BBO NO: 642124**
One Washington Mall
Suite 1400
Boston, MA 02108
(617) 723-9165

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by/hand, mail, overnight mail, facsimile on 16 - 10 - 05

# EXHIBIT "E"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-11856-GAO

ANNIE BATTARD,　　　　)
　　　Plaintiff　　　　)
　　　　　　　　　　　　)
　　v.　　　　　　　　　)　　　**AFFIDAVIT OF CASSIDY GILLESPIE**
　　　　　　　　　　　　)
ANTONIO CAPELA,　　　　)
　　　Defendant　　　　　)

1.　My name is Cassidy Gillespie.  I live at Apartment 2B,
2-23-36 Kaminoge Setagaya, Tokyo, Japan.  I am a citizen of the
United States.  I am teaching English courses to students in
Japan.

2.　I make this affidavit freely, based upon my personal
knowledge except where otherwise indicated, and where so
indicated, based upon information and belief which I believe to
be true.

3.　I was on a boat ride with Annie Battard on the day when
she was injured in the Summer of 2001 on Tony Capela's boat.

4.　At the time, I lived with my mother, Debby Smith, and
my sister, Ivy Smith, in a home in Newburyport along the Merrimac
River.

5.　Tony Capela was a neighbor of my mother's.

6.　Oliver Hummels was Tony's domestic partner.

7.　I met Annie Battard in France when I was a student of
Smith College and was studying in France for a semester.

8.　Annie Battard rented rooms in her home to students and

I lived with Annie Battard when I was in France.

9.    After I graduated from Smith College in 1999, I invited Annie Battard to visit me in Massachusetts.

10.   Annie Battard stayed in Newburyport at my mother's home during a visit in the summer of 1999 and again during her visit in the summer of 2001. I do not remember if she visited during the summer of 2000.

11.   I believe that Annie Battard met Tony Capela during one of her trips.

12.   I do not recall Annie Battard meeting Oliver Hummels before the day of the boat trip during which Annie was injured.

13.   The boating trip during which Annie Battard was injured occurred on the last day of her visit to the U.S. in August 2001.

14.   The day before the trip, Tony Capela invited my sister and me to ride on his new boat.

15.   With Tony's permission, I invited Annie on the trip and she agreed to go.

16.   Tony and Oliver operated the boat along the river to the dock behind my mother's house.

17.   Annie Battard, Ivy, and I boarded Tony's boat at my mother's dock.

18.   My mother did not join us on the trip.

19.   That was the first time that I had been on Tony's new boat.

Page 2 of 7

20. The boat was a beautiful medium size speed boat.

21. I believe that the boat only had one deck.

22. I remember that I was able to see and speak with all of the people on board the boat at all times.

23. Ivy and I sat next to each other on cushioned seats at the front of the boat.

24. Annie Battard sat across from Ivy and me on the cushioned seats along the opposite side of the front of the boat.

25. Tony and Oliver were at the controls of the boat.

26. I do not know which of the two men actually was operating the boat but both of them were in the area where a person would operate it.

27. I do not recall how long we were on the boat before Annie was injured but I believe that it was about 15 or 20 minutes.

28. We were heading into the Atlantic Ocean from the harbor.

29. I had been in my mother's boat in the harbor once or twice each summer.

30. My mother's boat was small; she did not operate it in the Ocean but only in the harbor.

31. I had been on boats which entered the Ocean about once or twice each summer, whether on friend's boats or cruises or whale watching trips.

32.  Tony's boat did not have seat belts.

33.  I do not recall being secured in Tony's boat in any fashion.

34.  I have no memory of holding on during the voyage.

35.  As we approached the Ocean, the water suddenly became very bumpy and choppy.

36.  I recall Tony or Oliver saying something about the "tide turning" or words to that effect.

37.  Ivy, Annie, and I began to bounce up and down in our seats.

38.  I recall the sensation of physically being hurled up from my seat, or having the boat seat drop below me, and having my tush land back on the seat afterwards.

39.  At first, Ivy and I enjoyed the sensation of the choppiness.

40.  The waves were bumpier than we expected and rougher than I remember from previous trips.

41.  Then, we hit one very large wave and there was a big bounce.

42.  Annie was startled and said, "Mon Dieu!"

43.  I recall thinking, "Wow, this is like scary!"

44.  I believe that Tony was operating the boat at this time but it could have been Oliver since they remained near each other at the controls.

45. Either Tony or Oliver said, "This is the choppy part. We're going to try to go through it as quickly and as smoothly as we can".

46. We could feel the boat continue to bounce.

47. Either Tony or Oliver said, "We're doing the best we can. We'll be on the Ocean in a sec".

48. It did not seem to me that Tony's boat had changed speed or course while we were in the rough waves.

49. We hit another wave.

50. Annie Battard was thrown off her seat and landed on the floor of the boat.

51. Tony or Oliver immediately stopped the boat.

52. The boat continued to rock on the big waves.

53. Annie Battard yelled with each wave that struck the boat, but also kept saying that she would be all right.

54. Tony and Oliver freaked out.

55. Annie did not want to move or was not able to move.

56. Annie just wanted to stay on the floor of the boat.

57. Tony and Oliver said that they were concerned that if we tried to return to shore we would have to pass back through the rough waves a second time.

58. Tony called the Coast Guard.

59. At that point, I panicked.

60. I thought Tony had overreacted by calling the Coast

Guard.

61.  As it turned out, we later learned that Annie had seriously hurt her back and that it was a good thing that the Coast Guard had been called.

62.  The Coast Guard sent a large vessel next to Tony's boat.

63.  Coast Guard personnel came aboard Tony's boat and spoke with Annie.

64.  I translated for the Coast Guard because Annie does not speak English well.

65.  After a while, the Coast Guard transferred Annie from Tony's boat to the Coast Guard vessel.

66.  I believe that I went aboard the Coast Guard vessel so that I could continue to translate for Annie, but I am not sure that I did.

67.  I remember meeting an ambulance back at shore, and the ambulance taking Annie to the hospital.

68.  Annie Battard later was transferred to a hospital in Boston.

69.  My mother, who had become close friends with Annie, as well as with Tony, visited her twice a week in Boston.

70.  At some point, Annie's son came from France to stay with his mother.

71.  While he was in the U.S., Annie's son stayed in my

Page 6 of 7

mother's house.

72.  Annie and her son returned to France suddenly.

73.  My mother was not informed that she had left the hospital until my mother went to the hospital to visit her and was told that Annie had returned to France.

74.  I have not spoken with Annie Battard since she returned to France.

75.  I do not know Annie Battard's medical condition at this time.

76.  I have reviewed this Affidavit and the information contained in it is true and correct to the best of my memory.

Signed under the pains and penalties of perjury, this 6th day of May, 2005.

CASSIDY GILLESPIE